**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

NATHAN RILEY,                                    )
                                                 )
          Plaintiff,                       )
                                                 )
    v.                                   )          No. 11-537
                                                 )
                                                 )          Judge Cathy Bissoon
MICHAEL DECARLO, *et al*.,                       )
                                                 )
          Defendants.                      )

## MEMORANDUM ORDER

For the reasons stated below, Defendants' motion for summary judgment (Doc. 63) is granted. Additionally, Plaintiff's Eighth Amendment claim regarding his tuberculosis test is dismissed with prejudice. Finally, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, which are dismissed without prejudice to his refiling them in state court.

Plaintiff Nathan Riley ("Plaintiff") is a state prisoner currently housed at the State Correctional Institution at Greene ("SCI-Greene") in Waynesburg, Pennsylvania. Plaintiff brings this suit pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging that a myriad of Defendants violated his rights under the First, Eighth and Fourteenth Amendments to the Constitution of the United States. Compl. (Doc. 5 at 3). Plaintiff also raises claims under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc *et seq*., as well as various claims pursuant to state law. Id. This suit commenced on April 26, 2011, with the receipt of the complaint. Id. Plaintiff was granted leave to proceed *in forma pauperis* ("IFP") on April 28, 2011. (Doc. 4).

1

Defendants filed the instant motion for summary judgment on February 24, 2012.  (Doc. 63).  Plaintiff filed a response in opposition thereto on May 14, 2012.  (Doc. 71).  This motion is ripe for disposition.

I.   Background

Plaintiff was transferred to SCI-Greene on May 15, 2007.  (Doc. 66 ¶ 1; Doc. 72 ¶ 1).  He was placed in administrative custody ("AC") upon his arrival, and was housed in the prison's Restricted Housing Unit ("RHU").  (Doc. 66 ¶ 1; Doc. 72 ¶ 1).  While there is disagreement between the parties as to why Plaintiff initially was placed in the RHU, the record clearly indicates that his confinement there – which lasted until December 17, 2010 – was based on the fact that Plaintiff was in danger from another individual at SCI-Greene, and could not be protected by other means.[1]  See generally (Doc. 64-2).

Plaintiff legal claims in the instant lawsuit arise from five distinct categories of bad acts or omissions allegedly committed by Defendants.  The material facts of this case are most easily parsed if they are divided according to the category to which they relate.

A.  Denial of Food

Plaintiff alleges that, during his stay in the RHU, he was served a diet consisting of approximately one-third of the calories provided to inmates in the general population.[2]  (Doc. 1

_____

[1] Indeed, Plaintiff's lengthy AC status was the subject of an earlier case.  See Riley v. Beard, No. 08-1675, 2011 WL 1204264 at *1-*4, *11-*13 (W.D. Pa. Mar. 29, 2011) (Fischer, J.) (dismissed for failure to prosecute sub nom. Riley v. Folino, 2012 WL 1688721 (W.D. Pa. May 14, 2012)).

[2] Plaintiff characterizes his pleading as a "verified complaint," and argues that it should be treated as an affidavit for the purposes of the instant motion for summary judgment.  See (Doc. 71 ¶ 3).  It is true that verified pleadings may be treated in such a manner on summary judgment. (continued. . .)

¶¶ 1-3).  He asserts that this has resulted in "substantial weight loss of approximately 30 plus

pounds[,]" and has caused him to suffer "constant hunger, weakness, fatigue, and physically [sic]

drained."  <u>Id.</u> ¶¶ 1, 4.  Plaintiff further asserts that his allegedly inadequate diet was generally

characteristic of the amount of food served to inmates in the RHU.  <u>Id.</u> ¶ 4; <u>see also</u> (Doc. 72

¶ 3).  Defendants deny Plaintiff's allegations.  <u>See</u> (Doc 66 ¶¶ 36-44).

Plaintiff claims that Defendant DeCarlo subjected him to cruel and unusual punishment

by subjecting him to this "semi-starvation" diet."[3]  <u>Id.</u>  Defendants Folino and Varner allegedly

violated Plaintiff's Eighth Amendment rights due to their roles in the prison grievance system.

<u>Id.</u> ¶¶ 50-51.  Finally, Plaintiff claims that Defendants DeCarlo and Folino's "failure to provide

[him] with the mandated 2800 calorie diet" constitutes the tort of negligence under 37 Pa. Code

§ 95.230.[4]  <u>Id.</u> ¶ 52.

---

See <u>Reese v. Sparks</u>, 760 F.2d 64, 67 (3d Cir. 1985); <u>see also</u> <u>Boomer v. Lewis</u>, No. 3:06-CV-
850, 2009 WL 2900779, at *18 n.11 (M.D. Pa. April 1, 2009) (collecting cases).  It is curious
that the affidavit submitted by Plaintiff, by virtue of which he asserts that his complaint is
"verified," was not signed under penalty of perjury.  <u>See</u> (Doc. 5 at 21-22).  Be that as it may,
this Court will credit his complaint as "verified," and treat it as an affidavit, to the extent that it
complies with the requirements of Rule 56(c)(4) that it "be made on personal knowledge, set out
facts that would be admissible in evidence, and show that the affiant or declarant is competent to
testify on the matters stated."

[3] Given the wording of the complaint, it is unclear whether Plaintiff alleges that Defendant
DeCarlo did this personally, or whether Plaintiff believes that he is liable in his supervisory
capacity.  <u>See</u> (Doc. 5 ¶ 49) (asserting that Defendant DeCarlo is liable due to his "fail[ure] to
properly supervise subordinates").  Out of an abundance of caution, this Court will assume the
former.  <u>But see</u> Part II.A, <u>infra</u>.

[4] 37 Pa. Code § 95.230 sets the minimum standards for food service at county jails in
Pennsylvania.  SCI-Greene, however, is not a county jail.

B.  <u>Unsanitary Food Trays</u>

Plaintiff claims that Defendants DeCarlo and Dittsworth violated his Eighth Amendment

right to be free of cruel and unusual punishment by allegedly "subjecting [him] to unsanitary and

contaminated food service" trays.  (Doc. 5 ¶ 46).  He also raises state law claims against these

Defendants.  <u>Id.</u> ¶ 48.  Additionally, Plaintiffs raises an Eighth Amendment claim against

Defendants Rogers, Folino and Varner – presumably due to their roles as adjudicators of prison

grievances.  <u>Id.</u> ¶ 47.

Defendant argues that the issue of unsanitary food trays was dealt with by Judge Fischer

in an earlier lawsuit filed by Plaintiff, and this is barred by *res judicata*.  (Doc. 65 at 12-13); <u>see</u>

<u>also</u> <u>Blount v. Folino</u>, No. 10-697, 2011 WL 2489894 at *11-*13, *15-*16 (W.D. Pa. June 21,

2011) (Fischer, J.).  Plaintiff does not address this argument in his response to Defendants'

motion, nor does he raise any reference to this claim at all.  (Docs. 71 and 72).

C.  <u>Tuberculosis Test</u>

Department of Corrections ("DOC") policy requires inmates to undergo periodic testing

for tuberculosis.[5]  (Doc. 64-3 at 2-4).  This is performed using a test in which a small portion of

purified protein derivative ("PPD") is placed under the patient's skin.  (Doc. 5 ¶ 18; Doc. 66

¶ 14).  Plaintiff asserts that this form of testing is forbidden under the tenets of his religion.

(Doc. 5 ¶¶ 16-18).  He alleges that he was kept in AC status under "medical keeplock for two-

---

[5] Defendants submit, as evidence of this fact, DOC regulations that were issued on July 8, 2011 –
well after the dates relevant to Plaintiff's claims.  <u>See</u> (Doc. 64-3 at 2).  However, it appears
uncontested by the parties that periodic testing for tuberculosis is the rule in DOC facilities.  <u>See,</u>
<u>e.g.,</u> (Doc. 5 ¶¶ 16-25).

and-a-half years" due to his refusal to submit to a PPD test.  Id. ¶¶ 18-19.  Defendants deny that

Plaintiff's administrative confinement ever was based on his refusal to submit to a PPD test, and

submit evidence of their position on the record.  See (Doc. 65 at 3-4).

Plaintiff claims that Defendants Grego, Folino and Varner were responsible for Plaintiff's

"medical keeplock" status.  (Doc. 5 ¶ 53).  This allegedly violated RLUIPA, as well as the

Eighth Amendment.  Id.  In spite of his explicit invocation of the Eighth Amendment in the

complaint, Plaintiff pleads this claim as though it is a violation of the Free Exercise Clause of the

First Amendment.  Id. ¶¶ 21-25.  He also argues the same in his brief in opposition to the

pending motion to dismiss.  (Doc 71 at 11).


D.  Religious Diet

Plaintiff asserts that he is a Muslim, and that the tenets of his religion prohibit him from

eating certain foods.  (Doc. 5 ¶¶ 26-27).  The record indicates that Plaintiff currently receives the

DOC's "alternative protein diet," which does not contain meat, but does contain items, such as

dairy products, that are derived from animals.  Id. ¶ 29; (Doc. 64-3 at 19-21; Doc. 64-4 at 5).

However, in his complaint he asserts that this diet does not necessarily conform to the

requirements of his religion, and he demands that the DOC provide him, and all Muslim inmates,

with a Halal religious diet.  (Doc. 5 ¶¶ 30, 36).

According to Plaintiff, the alleged refusal of Defendants Menchyk, Folino and Varner to

provide Plaintiff with a "daily Halal menu" allegedly violated RLUIPA.  Id. ¶ 54.  Plaintiff also

claims that the actions of Defendants Menchyk, Dittsworth, Folino, Varner and Beard with

respect to this issue violated state law.  Id. ¶¶ 55 and 58.  Additionally, Plaintiff claims that

Defendants Menchyk, Dittsworth, Folino, and Beard's alleged failure to provide him with a

Halal diet violated his rights under the First Amendment, as well as the Equal Protection Clause of the Fourteenth Amendment.  Id. ¶¶ 56-57.


    E.   RHU Ventilation System

      Finally, Plaintiff alleges that the ventilation system in the RHU at SCI-Greene is not adequately cleaned, and that its filters are not changed often enough.  (Doc. 5 ¶ 38).  As a result, the vents in the RHU emit "voluminous amounts of dust, lint, dirt, hair, odors, dust mites, fumes from cleaning chemicals, second-hand cigarette smoke and other toxic materials[.]"  (Doc. 5 ¶¶ 38, 40).  Additionally, in spite of the existence of a no-smoking policy at SCI-Greene, corrections staff allegedly smoke in the RHU, exposing Plaintiff to second-hand smoke via the air ducts.  Id. ¶ 42.

      Plaintiff claims that the poor quality of the air in the RHU caused him to suffer "Sick Building Syndrome, breathing difficulties, nose-bleeds, sinus and nasal congestion, respiratory infections, coughs that produce yellowish color mucus, chronic sneezing, head-aches, vomiting, dizziness, and burning sensation in chest area [sic]."  Id. ¶ 44.

      Plaintiff asserts that the actions of Defendants Blaze, Niehenke, Cumberledge, Folino and Varner with respect to this claim violated his rights under the Eighth Amendment to the Constitution of the United States, as well as Article I, §§ 8, 13 and 27 of the Pennsylvania Constitution.  (Doc. 5 ¶¶ 59-63).  Plaintiff specifically asserts that Defendants Blaze, Niehenke and Cumberledge "failed to properly clean and/or oversee and ensure that the ventilation is cleaned at SCI-Greene."  Id. ¶ 38.  He does not indicate why he believes that Defendants Folino and Varner are liable.

II.   <u>Analysis</u>

Defendants raise several arguments in support of their motion for summary judgment. These will be addressed below.

A.  <u>Personal Involvement</u>

It is well established that no liability exists under section 1983 solely by means of vicarious liability or *respondeat superior*.  <u>Shaw v. Stackhouse</u>, 920 F.2d 1135, 1147 (3d Cir. 1990).  Instead, in order for Section 1983 liability to attach, a plaintiff must show that a defendant was personally involved in the deprivation of his or her federal rights.  <u>See</u> <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005).  In cases involving a supervisory or reviewing defendant, personal involvement may be shown through "'allegations of personal direction or of actual knowledge and acquiescence.'"  <u>Id.</u> at 353 (quoting <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988)).  Additionally, the denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement.  <u>See e.g.</u> <u>Jefferson v. Wolfe</u>, No. 04-44, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006) (<u>citing</u> <u>Watkins v. Horn</u>, No. CIV.A. 96-4129, 1997 WL 566080, at *4 (E.D. Pa. Sept. 5, 1997)); <u>see also</u> <u>Pressley v. Beard</u>, 255 F. App'x 216, 218 (3d Cir. 2008) (affirming the dismissal of supervisory officials who merely failed to take corrective actions when grievances or investigations were referred to them).

Plaintiff's constitutional claims against Defendants Rogers, Folino, Varner and Beard clearly are related to their supervisory roles or their involvement in the grievance process and, as a result, fail as a matter of law.  The same argument may be made with respect to many of the

claims against the remaining Defendants – however, in the interest of thoroughness and out of an abundance of caution, this Court will delve deeper into their merits.


B.  First Amendment Claims

It is well recognized that "all prisoners must be afforded reasonable opportunities to 'exercise the religious freedom guaranteed by the First and Fourteenth Amendments.'"  Small v. Lehman, 98 F.3d 762, 765 (3d Cir.1996) (overruled in part on other grounds, City of Boerne v. Flores, 521 U.S. 507 (1997)) (quoting Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972)).  That having been said, a plaintiff is required to show an actual impingement on his rights in order to proceed with such a claim under Section 1983.  Parratt v. Taylor, 451 U.S. 527, 535 (1981) (requiring the showing of the deprivation of a right, privilege, or immunity secured by the Constitution or laws of the United States in order to state a claim under Section 1983) (overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986)).


1.  Tuberculosis Test

With respect to Plaintiff's claims involving tuberculosis testing, the record is clear that he did not refuse to undergo PPD testing until May 30, 2009 – more than two years into his administrative confinement at SCI-Greene.  (Doc. 64-1 at 4-7, 10-11; Doc. 64-3 at 9).  Additionally, the records of Plaintiff's hearings before the prison Program Review Committee ("PRC") – the body that was responsible for determining whether Plaintiff's AC status should be continued – do not list his refusal to submit to the PPD test as basis for his continued confinement to the RHU.  See (Doc. 64-3 at 6-7); see also (Doc. 64-2 at 2-50) (records of Plaintiff's PRC hearings and his appeals from the determinations of the PRC).  Instead, it

appears that the bases for his confinement were the danger posed to him by some other individual or individuals at SCI-Greene, as well as his history of violence while incarcerated. See, e.g., (Doc. 64-2 at 46).  There simply is no indication on the record, outside of Plaintiff's bare assertions, that his administrative confinement was a result of his refusal to submit to a PPD test.  Additionally, this Court notes that Plaintiff was released to the general population on December 17, 2010 – roughly a year and a half after he first refused the test, and more than four months before he filed this case.

Based on the record, it is clear that whatever regulations exist in the DOC regarding PPD testing were not used as a basis for Plaintiff's lengthy administrative confinement and, as a result, did not burden or interfere with the practice of his religion in any way.  Plaintiff simply has not met his burden to show that he has suffered any deprivation of his rights under the First Amendment with respect to this claim.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

2.  Religious Diet

At the outset of the analysis of this claim, it is unclear from Plaintiff's filings what it is, exactly, that he finds objectionable about his current diet.  For example, he repeatedly asserts in his filings and in his grievances that his issue is not one of being provided Halal meat, but instead one of avoiding forbidden ingredients in whatever food he is provided.  (Doc. 72 ¶ 10; Doc. 64-3 at 29).  However, the evidence that he submits in explanation of what foods are unacceptable to his religion relates only to meat, other animal products and, to a lesser extent,

alcohol.[6]  See (Doc. 71-1 at 4-6).  Furthermore, it is clear from his complaint, as well as his grievances that have been submitted on the record, that Plaintiff does not, in fact, know what ingredients actually are included in his diet.  See (Doc. 5 ¶ 32; Doc. 64-3 at 29).  This not only undermines his assertion that he is being served food that is forbidden by his religion, it also leads, inescapably, to the conclusion that any allegations to the contrary made in his so-called "verified" complaint are not based on personal knowledge, and thus do not meet the requirements of Rule 56(c)(4).

Moreover, given that Plaintiff's evidence with respect to this matter indicates that animal products are at the center of this issue – as well as Plaintiff's insistence that he "has never requested a Halaal [sic] meat diet[,]" it is curious that Plaintiff has not availed himself to the "no animal product diet" provided by the DOC.  See (Doc. 72 ¶ 11; Doc. 64-3 at 20).  Indeed, it appears from the record that Plaintiff has been informed of this option numerous times, but willfully has refused to request it.[7]  (Doc. 64-3 at 19-21, 28-32).

Also curious is that Plaintiff attempted, as late as December 6, 2010, to be placed on a Kosher diet.  See (Doc. 64-3 at 27-32).  In addition to the obvious discord this creates when read in connection with Plaintiff's allegations of his sincerely-held religious beliefs as a Muslim, the record indicates that this diet includes items such as cottage cheese and peanut butter, which are listed by Plaintiff in his complaint as having the potential of containing forbidden additives. (Doc. 64-3 at 20; Doc. 5 ¶ 30; Doc. 64-4 at 3).

---

[6] It is not asserted by Plaintiff, or anywhere else on the record, that the DOC provides inmates with an alcohol ration.

[7] There is no dispute between the parties on the record that the "no animal product diet," indeed, is devoid of animal products.

There is no evidence on the record that Defendants are forcing Plaintiff to consume foods that are forbidden by his religion.[8]  Instead, Plaintiff seems to be attempting to force Defendants to cater to his ill-defined personal preferences, which is not cognizable under the Free Exercise Clause.  See Moore v. Cucchi, No. 09-2217, 2011 WL 4595907, at *3-*4 (D.N.J. Sept. 30, 2011).  Plaintiff's apparent displeasure with it notwithstanding, the "no animal product diet," undisputedly excludes all of the ingredients that he claims to be religiously unacceptable, and it appears from the record to be available upon Plaintiff's request.  Therefore, summary judgment will be granted to Defendants on this claim.


C.  RLUIPA Claims

RLUIPA provides in part: "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless that burden "is in furtherance of a compelling governmental interest" and is accomplished by the "least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2); see also Cutter v. Wilkinson, 544 U.S. 709, 712 (2005).  In order to prevail under RLUIPA, a plaintiff must show that his religious exercise has been substantially burdened by the challenged conduct.  Washington v. Klem, 497 F.3d 272, 277-78 (3d Cir. 2007).  The Court of Appeals for the Third Circuit has defined a "substantial burden" in the context of RLUIPA to mean

---

[8] Even the photocopies of packets of soup provided by Plaintiff in an earlier filing, to the extent that it has been established that they were fed to Plaintiff, do not list meat – or any other additive recited by Plaintiff as forbidden – as an ingredient.  See (Doc. 46-1 at 2).

> 1) a follower is forced to choose between following the precepts of
> his religion and forfeiting the benefits otherwise generally
> available to other inmates versus abandoning one of the precepts of
> his religion in order to receive a benefit; OR 2) the government
> puts substantial pressure on an adherent to substantially modify his
> behavior and to violate his beliefs.

Id. at 280 (emphasis in original).  Only after this test has been met is the government actor

required to establish that the challenged conduct furthers a compelling interest, and that the least

restrictive means are being used to do so.  Id. at 283-84.

    For the reasons stated in Part II.B.1 of this memorandum order, supra, Plaintiff has not

demonstrated any sort of burden on his religious beliefs related to the PPD test.  Accordingly,

summary judgment must be granted in Defendants favor on this claim.[9]

    Similarly, Plaintiff has failed to show any impingement on his religion with respect to his

diet.  Indeed, based on the evidence that he has provided on what is permissible to eat under his

religious beliefs, and what is not, it appears that the "no animal product" diet would suit his

needs perfectly.  Moreover, it is undisputed that DOC personnel have all but bent over

backwards in an attempt to provide it to him as an accommodation.  Accordingly, summary

judgment must be granted to Defendants on this claim as well.


    D.  Fourteenth Amendment Claims

    Plaintiff's Equal Protection claim with respect to his religious diet fails for similar

reasons.  Plaintiff complains that, in spite of DOC policies accommodating Jewish and Buddhist

inmates with respect to their diets, there is no such accommodation for Muslims.  (Doc. 5 ¶¶ 35-

---

[9] Additionally, as it is uncontested that Plaintiff is no longer confined to the RHU, it is clear that
that an injunction releasing him to the general population – the only relief that is available under
RLUIPA – is unnecessary.  Sossamon v. Texas, ___ U.S. ____, 131 S.Ct 1651, 1663 (2011).

36).  Based on the undisputed record evidence, Plaintiff's bald assertion simply is not true.  The "no animal products diet," the contents of which are not in dispute, excludes all of the ingredients – such as meat and additives that contain animal byproducts – that Plaintiff has listed as forbidden by his religion.  See (Doc. 71-1 at 2-6).  The fact that the DOC does not call it the "Halal diet" does nothing to change this fact, and the mere name of the diet does not qualify as the disparate treatment necessary to constitute an Equal Protection violation.  See Artway v. Att'y Gen. of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996).  Thus, Defendants will be granted summary judgment on this claim.


     E.   Eighth Amendment Claims

The Eighth Amendment's prohibition of cruel and unusual punishment forbids prison officials from subjecting prisoners to inhumane conditions of confinement.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates[.]'"  Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).  In order to state an Eighth Amendment conditions of confinement claim, Plaintiff must allege both that he has been denied "the minimal civilized measure of life's necessities" and that this was done while the Defendants had a "sufficiently culpable state of mind."  Farmer, 511 U.S. at 834.

With respect to the second element of this test, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials.  Farmer, 511 U.S. at 833-34; Wilson v. Seiter, 501 U.S. 294, 302-03 (1991); Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  The deliberate indifference standard has been defined as requiring that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists, and he

must also draw the inference." Farmer, 511 U.S. at 837.

1.   Denial of Food

Defendants deny Plaintiff's allegations with respect to this claim.  See (Doc. 66 ¶¶ 36-

44).   In support of their position, they cite to responses to Plaintiff's grievances of the issue, in

which (1) Defendant DeCarlo told Plaintiff, on March 5, 20102, that he receives 2800 calories a

day – 600 more than what allegedly is recommended by the USDA for an adult male, see (Doc.

64-5 at 12); and (2) Defendant Folino asserts that a food nutritionist determines the portions

served to inmates, id. at 10.   Additionally, Defendant DeCarlo noted that, four days prior to

issuing his response Plaintiff's grievance, Plaintiff weighed 163 pounds, and that Plaintiff had

weighed 187 five years earlier.  Id. at 4.  This is supported by Plaintiff's medical records, on

which it is stated that, as of June 9, 2010 – roughly three months after Defendant DeCarlo's

above response was issued – Plaintiff was 5'8" tall, weighed 158 pounds, and had a body mass

index of 24%.[10]

---

[10] Early in this history of this case, after holding a hearing on whether to issue a temporary
restraining with respect to Plaintiff's claims of inadequate diet, Judge Fischer found that
Plaintiff's height and weight were not unhealthy for a man of Plaintiff's age.  (Doc. 10 at 4).  It
also was at this hearing when it first came to light that Plaintiff had been released from the RHU
on December 17, 2010 – more than four months before he filed his complaint.  See id at 3; see
also (Doc. 5 at 19).  This was in spite of Plaintiff's explicit indication that he was still in the
RHU and suffering from inadequate nutrition at the time that the complaint was filed, as well as
the purportedly "verified" nature of his allegations.  (Doc. 5 at 3).  It is noteworthy that a BMI of
24 is at the upper end of the "normal" weight range.  See Healthy Weight, Centers for Disease
Control and Prevention, http://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/index.html
(last visited Sept. 20, 2012).

As Judge Fischer recognized in her order denying a TRO on his claim, Plaintiff's allegations of having spent a protracted period of time on a semi-starvation diet simply are unbelievable given his healthy weight.  <u>See</u> (Doc. 10 at 4).  This utterly undermines any argument that Plaintiff was receiving inadequate nutrition.  Additionally, even if it could somehow be determined that Plaintiff's nutrition were inadequate,[11] Plaintiff's healthy weight and BMI, as demonstrated on the record, would conceal this fact from the Defendants.  Thus, Plaintiff cannot demonstrate Defendants' deliberate indifference.[12]  Accordingly, Defendants will be granted summary judgment on this claim.

2.  <u>RHU Ventilation System</u>

The record indicates that Plaintiff filed at least three grievances with respect to this issue. The first indicates that he sent a request slip on May 26, 2008 to Defendant Niehenke, complaining about the "dust, lint and shower odor" coming through the vents into his cell.  (Doc 64-5 at 31-34).  This appears to have exhausted the DOC grievance process, and was denied.  <u>Id.</u> at 23.  The second, which also exhausted the process and was denied, mentions that the "Maintenance Facility Supervisor" (presumably Defendant Blaze) and Defendant Cumberledge were informed of Plaintiff's complaint on February 4, 2010, and February 17, 2010, respectively.

---

[11] It is noteworthy that the evidence on the record does not support such a conclusion.  Plaintiff has not demonstrated that his caloric intake was deficient while he was in the RHU.  Indeed, he has not submitted any evidence – other than his bare assertion – indicating that the amount of food he received differed from what was provided to inmates in the general population. Moreover, for the reasons stated above, Plaintiff's assertions – to the extent that they could be considered evidence – are undermined by the medical evidence on the record.

[12] Additionally, it appears from the record that Defendant DeCarlo is being sued due only to his position as supervisor or role in the grievance process.  For the reasons stated in Part II.A of this memorandum order, <u>supra</u>, this is insufficient for liability to attach to this Defendant under Section 1983.

Id. at 40.  Plaintiff submits a response to a request slip, which was sent to Defendant

Cumberledge on August 26, 2011 – four months after the filing of this complaint.  (Doc. 71-5 at

2).  Plaintiff initially submitted this piece of evidence – as well as a grievance from April of 2011

– in support of a motion to file a supplemental complaint.  See (Doc. 46; Doc. 46-1 at 28-34).  In

an order denying that motion, Plaintiff was informed that claims that had not been exhausted

prior to the filing of the complaint could not be raised in the instant suit.  (Doc. 58 at 3-4) (citing

Booth v. Churner, 206 F.3d 289, 300 (3d Cir. 2000) and Jones v. Bock, 549 U.S. 199, 215

(2007)).

Considering the evidence on the record, and assuming, *arguendo*, that Plaintiff has met

the first prong of the Eighth Amendment test, it is clear that he has not adduced any evidence of

deliberate indifference.  First, the grievance documents submitted by Defendants show that

maintenance was performed on the air ducts in the RHU – the ducts were cleaned and the filters

were changed – presumably, although not necessarily, in response to Plaintiff's complaints.

(Doc. 64-5 at 23-29).  Indeed, the periodic cleaning of the air ducts is corroborated by Plaintiff's

own evidence.  (Doc. 71-5 at 2).

Additionally, Plaintiff submits medical records which show that he received treatment for

"allergies" and "sinus congestion" on various dates relevant to the complaint.  (Doc. 71-4 at 2-8).

It is notable that medical staff did not recommend that Plaintiff be moved to a different cell with

better ventilation, but, instead, treated him with medication for discrete periods of time.  It is also

notable that Plaintiff's lungs were characterized as "clean[.]"  Id. at 2.  While these diagnoses are

not necessarily dispositive of the question of whether particulates were being released by the air

ducts in Plaintiff's cell, they due further undermine any contention that Defendants might,

somehow, have been deliberately indifferent to any unconstitutional conditions of confinement.

Cf. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (citing Durmer v. O'Carroll, 991 F.2d 64

(3d Cir. 1993)).  "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their

assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be

chargeable with the Eighth Amendment scienter requirement of deliberate indifference."  Spruill,

372 F.3d at 236.  Accordingly, Defendants will be granted summary judgment on this claim.


    3.   Unsanitary Food Trays

      As stated above, Plaintiff does not respond to Defendants' argument that this claim is

barred by *res judicata* – and, indeed, does not mention this claim at all in his response to their

motion for summary judgment.  This is sufficient in itself for a grant of summary judgment with

respect to this claim.  Fed. R. Civ. P. 56(e)(3).  However, out of an abundance of caution, this

Court will address the merits of Defendants' argument.

      *Res judicata*, or claim preclusion, is a legal doctrine that prohibits the relitigation of

claims that have been decided by a court of competent jurisdiction.  The standard for *res judicata*

under federal law is: (1) a final judgment on the merits; (2) claims involving the same parties or

their privies, and; (3) a suit based on the same cause of action.  Brody v. Hankin, 299 F. Supp. 2d

454, 459 (E.D. Pa.2004).

      Here, a side-by-side comparison of Plaintiff's complaint from the matter *sub judice*, with

the complaint from Civil Action 10-697, shows that Plaintiff is suing the same Defendants, for

acts or omissions that occurred during the same period of time, regarding the same issue of

allegedly unsanitary food trays.  (Doc. 5 ¶¶ 11-15; 46-48); see also (Doc. 76 ¶¶ 35-41, 75-78)

Blount, No. 10-697 (W.D. Pa. filed May 20, 2010) (amended complaint filed December 10,

2010); see also Blount, 2011 WL 2489894 at *11-*13, *15-*16 (W.D. Pa. June 21, 2011)

(Fischer, J.).  Given the existence of a final order dismissing Plaintiff's prior complaint for failing to state a claim, the instant suit is barred by *res judicata*.  Accordingly, summary judgment is granted to Defendants.  Furthermore, even if *res judicata* did not apply, this claim clearly is duplicative of the one raised in the earlier civil action.  As such, and in the alternative, it is appropriate to dismiss it, *sua sponte*, as frivolous and malicious.  McWilliams v. Colorado, 121 F.3d 573, 574 (10th Cir. 1997) (holding, in the prisoner litigation context, that "[r]epetitious litigation of virtually identical causes of action may be dismissed under § 1915 as frivolous or malicious").

    4.  Tuberculosis Test

In spite of Plaintiff's bare and conclusory legal assertion that PPD testing test somehow violates his right to be free from cruel and unusual punishment, he does not go so far as even to provide allegations of fact that could plausibly state a claim on which relief could be granted under this theory.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Accordingly, this claim will be dismissed, *sua sponte*.  Additionally, given that the record demonstrates that Plaintiff (1) never has been forced to undergo a PPD test against his will; and (2) has not been sanctioned for his refusal, it is clear that leave to amend would be futile.  Thus, dismissal will be with prejudice.

    F.  State Law Claims

Inexplicably, Defendants do not address any of Plaintiff's state law claims.  However, in light of the fact that all of Plaintiff's federal claims have been disposed of, this Court declines to exercise supplemental jurisdiction over his claims under state law, pursuant to

28 U.S.C § 1367(c)(3).  These claims will be dismissed without prejudice to Plaintiff raising them in state court, if appropriate.


III.    Conclusion

For the reasons stated above, summary judgment will be granted to Defendants on all of Plaintiff's claims arising under the laws of the United States, except as to Plaintiff's Eighth Amendment claim regarding his tuberculosis test, which will be dismissed with prejudice. Additionally, this Court will decline to exercise supplemental jurisdiction over his state law claims, which will be dismissed without prejudice to refiling them in state court.


AND NOW, this 25th day of September, 2012,

IT IS HEREBY ORDERED that Defendants' motion for summary judgment (Doc. 63) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Eighth Amendment claim regarding his tuberculosis test is DISMISSED with PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's state law claims, which were not addressed in the motion, are DISMISSED, without prejudice to refiling them in state court.


BY THE COURT:


s/Cathy Bissoon
CATHY BISSOON
UNITED STATES DISTRICT JUDGE

**cc:**
**NATHAN RILEY**
CT 8571
SCI Greene
175 Progress Drive
Waynesburg, PA 15370